TATE, Judge.
This suit upon a promissory note is for deficiency judgment. Previously, by execu-tory process, plaintiff had seized and sold at sheriff’s sale (with appraisement) certain property mortgaged to secure this note. No appearance was made in these earlier proceedings by defendants, comakers of the note and copurchasers-mortgagors of the equipment mortgaged to secure same.
Defendants answered the petition for deficiency judgment, however, affirmatively alleging that they are not obligated to pay the balance of the note given for the purchase price, since the beer cooler and condensing unit purchased by them from plaintiff did not properly cool their beer and were subject to such redhibitory defects or breaches of warranty as to be utterly worthless for the purposes for which purchased. This defense was sustained by the District Court, which rendered judgment after trial dismissing plaintiff’s suit.
In seeking reversal of this judgment, plaintiff-vendor-holder first urges that the defendant-purchasers, having failed to appear and raise these defenses in the earlier executory process foreclosure proceedings, are estopped herein to assert such defenses — in short, that the order issuing the writ of executory process to seize and sell the property is res judicata between the parties, defendants having failed to appeal from or seek injunction against same.
Executory process, Code Prac. arts. 732-753, is a procedure of seizure and sale of property mortgaged by “confession of judgment”, executed before a notary and two witnesses, Article 733, C.P., “on a simple petition, and without a previous citation of the debtor,” Article 734, C.P. However, at least three days notice of this order of seizure must be given to the debtor, Articles 735, 736, C.P. While technically executory process is not an in rem proceeding, it seeks immediate foreclosure of property thus solemnly mortgaged and does not assert any demand for personal liability of the debtor over the value of the property. For instance, herein the prayer in the previous executory process proceedings does not seek monied judgment against the mortgagors; it simply seeks immediate seizure and sale of the property mortgaged. The District Court correctly held that defendants’ failure to contest the seizure and sale of equipment by executory process does not estop them from asserting defenses on the merits in a subsequent suit by the vendor for a monied deficiency judgment.
The cases cited to us by appellant are not determinative of the present question. Succession of Whitner, 165 La. 769, 770, 116 So. 180, and Ludeling v. Chaffe, 40 La.Ann. 645, 4 So. 586, concern the failure to raise defenses to the merits in earlier suits which proceeded to judgment on the merits. In the present case, there was no judgment on the merits, simply seizure and judicial sale of property pursuant to order;. *631 strictly speaking, the issue was not the validity of the obligation, but the validity of plaintiff’s privilege upon the property and his right to reclaim same by executory process (which are not denied by defendants-herein). Reichard v. Michinard, 33 La.Ann. 380, held that defendant could not urge in the subsequent deficiency judgr ment proceedings the alleged invalidity of the earlier sheriff’s sale under executory process (for selling the seized property en bloc, rather than by lots) when he had failed as was his .right to protest the defects at time of sale. Brown v. Freret, 10 Orleans App. 150, held that a defendant who permits without opposition the execution of judgment, cannot thereafter contest its validity. While these latter two cases ¡might be authority for the proposition that present defendants, having permitted the seizure and sale under executory process without opposition, cannot subsequently attack the validity of the order for seizure and sale, the seizure, or the sale; they are not authority for the proposition that defendants are estopped to assert defenses to monied judgment against them, sought for the first time in the present deficiency-proceedings.
Plaintiff-appellant, vendor, further urges that the evidence does not sustain the District Court’s finding of a breach of warranty on the part of vendor, since the alleged defect was not in the' beer cooler and condensing unit sold by him to defendants, but in the coin meter affixed to this property to provide a convenient method of making and collecting the installment payments due thereupon; and, further, that such vice or defect was not in the coin meter, so much as in the defendants’ improper or careless usage of same.
When plaintiff-vendor installed the electrically-powered beer-cooling unit, by mutual agreement an auxiliary coin meter (of which the vendor retained ownership) was also installed. It was necessary for purchasers to place 7 quarters ($1.75) during each 24 hours to maintain the continuous flow of electricity necessary to operate the cooling and condensing unit. These daily payments deposited were to be collected by the plaintiff-vendor to pay the monthly installments of $52.50.
On at least five different occasions during the month or two that defendants maintained the machine, it was necessary to secure the services of plaintiff-vendor or his agent to unjam the meter. During the time the meter was jammed, the electric current was cut off, and on two or three occasions the beer in the kegs was spoiled. Defendants claim that they could not rely on the beer-cooling unit to operate and it was completely worthless to them because of this inconstant operation, the danger of spoilage, and their inability to get prompt service from plaintiff to clear the meter and prevent loss of business and spoilage of beer.
Although plaintiff argues that the meter itself was not defective and that the jamming was caused by defendants’ failure to follow instructions as to the insertion of the quarter coins, we do not find manifestly erroneous the District Court’s conclusion that the meter itself failed to function, or “was a non-operating meter”, thus rendering the entire cooling unit useless. Although technically the meter belonged to the plaintiff, and the defect may not be strictly speaking a redhibitory defect under Article 2520, LSA-Civil Code, we likewise agree with the District Court’s conclusion “that it makes little difference to the proper operation of the unit which of the parts failed to function. The result is the same.”
 Therefore, “although it be agreed that the seller is not subject to warranty, he is, however, accountable for what results from his personal acts”. Article 2504, LS A-Civil Code. Also, when the plaintiff sold the defendants the cooling unit, the law bound him to warrant that the unit would operate, Article 2475, LSA-Civil Code. The District Court observed in conclusion that the “situation was brought about by his [the seller’s] own act in insisting upon the use of the meter so that he could more easily collect his installments. Permitting the plaintiff to recover in this action is to assist him to enrich himself as a result of his own neglectful acts.” Since pur *632 chasers can annul the sale on such grounds, J. Alfred Mouton, Inc., v. Hebert, La.App. 1 Cir., 199 So. 172, likewise for such reasons purchasers can avoid liability for the balance of the purchase price; see J. B. Beaird Co., Inc., v. Burris Bros., Ltd., 216 La. 655, 44 So.2d 693.
For the above and foregoing reasons, the judgment of the District Court herein dismissing plaintiff’s suit is affirmed. All costs to be paid by plaintiff-appellant.
Affirmed.