LOTTINGER, Judge.
The petitioner herein, Bickham Motors, Inc., filed an executory proceeding against defendant, James L. Crain, based upon a mortgage note and act of vendor’s lien and chattel mortgage bearing against a 1957 model GMC truck. The defendant took a rule nisi on petitioner to show cause why a preliminary injunction should not issue, coupled with a claim for damages, same being based upon redhibitory vices. The Lower Court rendered a judgment in favor of petitioner and against the. defendant in the sum of $3,500, plus 5% interest from date of judgment until paid, and for all costs, which said judgment recognized and maintained the act of vendor’s lien and chattel mortgage. The defendant has taken a devolutive appeal.
The record discloses that, on or about April 23, 1959 the petitioner sold defendant a 1957 model GMC truck, upon which the petitioner retained a vendor’s lien and chattel mortgage in the amount of $5,718.96. Said indebtedness was represented by a promissory note executed by petitioner on the said date. Subsequent thereto, the said note was sold to a finance company, however same was renegotiated to petitioner after the defendant became delinquent in making the monthly installment payments due thereon. On November 25, 1959 this executory proceeding was filed by petitioner, wherein he seeks to have the vehicle sold by the Sheriff with appraisement to satisfy the balance due on the said note in the principal amount of $4,024.31, plus interest and attorney fees, as well as certain out-of-pocket collection expenses not exceeding $150.
The defendant filed a petition alleging that there were certain redhibitory vices and defects in the said truck which were unknown to him at the time of his purchase thereof, and secured a Temporary Restraining Order enjoining the sale of the truck, and a rule was issued ordering petitioner to show cause why a preliminary injunction should not issue. Defendant further reconvened for alleged damages in the sum of $4,709.83, and prayed for judgment in the said amount.
The Lower Court, after hearing on the matter, rendered a judgment in favor of petitioner and against defendant in the sum of $3,500, plus 5% interest from date of judgment until paid, and for all costs, and further recognized the vendor’s lien and chattel mortgage on the truck. The defendant has taken this appeal.
Upon appeal the defendant alleges several errors on the part of the Lower Court. Of course, these errors are to the effect that the Restraining Order should have been *651 made permanent, and furthermore, alleges that the Lower Court erred in awarding a judgment which was inconsistent with the demands of both parties to this suit.
The record reflects the sale of the automobile, as well as the vendor’s lien and chattel mortgage arising therefrom, and the default in payments on the note by the defendant. The defendant, however, justifies such default upon his claim that there were certain vices and defects in the truck which were unknown to him at the time he purchased same, and which rendered the truck totally useless for the purposes for which he purchased it. The testimony shows, without any material contradiction, that at the time defendant purchased it, a rebuilt motor had just been installed by the petitioner during the month of March, 1959. Subsequent to the date of the sale on April 23, 1959, certain damages appeared to the engine resulting in a new engine being installed by petitioner on May 7, 1959. Again damages appeared to the engine, and a second new motor was installed by the GMC truck company in Baton Rouge on September 30, 1959. At the time the truck was sold to defendant, it had been driven approximately 103,000 miles, and, between the sale and the time the last motor failed, the truck had traveled an additional 6,000 miles.
The first difficulty which the defendant had with the truck occurred on the day after his purchase of same. He testified that he was driving the truck when it became overheated and started making a noise. Defendant pulled the truck over to the side of the highway and cut the motor off and called the petitioner. The truck was towed to petitioner’s place of business, and Mr. James W. Kelly, whose machine shop had just recently reconditioned the motor, dismantled the engine in order to determine the cause of the difficulty. Mr. Kelly testified that one of the pistons in the motor had melted from excessive heat. Upon further inspection of the motor, Mr. Kelly stated that he found a thermostat had been ruptured which, conceivably, could have caused the excessive heat. A new motor was installed in the truck on May 7, 1959. Subsequent thereto, during the month of September, 1959, the new motor became defective, and the General Motors representative in Baton Rouge again installed a second new engine, which engine was still in the truck at the time when it proved defective some three weeks later.
The only evidence which tends to show some defect to the motor or the truck which caused the blowing out of these three motors was Mr. Kelly’s testimony relative to a ruptured thermostat. There is no testimony whatsoever to indicate the cause of the damages occasioned to the two new motors which were subsequently installed except, possibly, abuse by the drivers of the truck.
The defendant was engaged in general hauling of commodities, and had several drivers who drove the truck. The representatives of the petitioner, as well as the General Motors representative in Baton Rouge testified that these new motors were in good condition, and that a normal life span should give 100,000 miles of relative trouble-free driving. It was testified by Mr. Carl Moore that broken valves, which represented the damages to the new motors, was usually caused by excessive engine ordeal. Mr. Moore further testified that the average life of a rebuilt motor should be between 50 and 75% of the average life of a new motor.
Mr. Dick Magee, who owned the truck prior to its purchase by defendant, testified that he had put approximately 100,000 miles on the truck, and although certain repairs were occasioned during this period, they did not appear to be excessive. Mr. Magee testified that he would have kept the truck if he was to drive it, however he had several drivers and it was “hard to keep up with them”. In other words, Mr. Magee indicated that the drivers were subject to abuse his trucks.
Although the defendant, as well as his drivers, testified that the truck had not been abused, the history of damages to the *652 motor indicate to the contrary. We do not believe that one rebuilt motor, as well as two new motors would have been so completely damaged in such a short period of time under reasonable and proper use. The defendant has failed to sustain his burden of proving redhibitory vices, and, under the provisions of Article 2530 of the LSA-Civil Code, the buyer who institutes the redhibi-tory action must prove that the vice existed before the sale was made to him if the vice does not make its appearance within three days following the sale. Although the damages were occasioned to the rebuilt motor within this three-day period, the subsequent new motors had been installed for a longer period of time before the trouble arose as to them. In this respect we find no error on the part of the Lower Court.
The judgment of the Lower Court, however, is not responsive to the prayers of either party, inasmuch as the Trial Court rendered a personal judgment against the defendant, whereas the petitioner’s action was an executory proceeding. In LeBlanc v. Rock, La.App., 84 So.2d 629, 630, we stated:
“Executory process, Code Prac. arts 732-753, is a procedure of seizure and sale of property mortgaged by ‘confession of judgment’, executed before a notary and two witnesses, Article 733, C.P., ‘on a simple petition, and without a previous citation of the debtor,’ Article 734, C.P. However, at least three days notice of this order of seizure must be given to the debtor, Articles 735, 736, C.P. While technically executory process is not an in rem proceeding, it seeks immediate foreclosure of property thus solemnly mortgaged and does not assert any demand for personal liability of the debtor over the value of the property.”
Therefore, for the reasons hereinabove assigned, the judgment of the Lower Court will be amended so as to dismiss the injunction proceeding and the reconventional demand filed on the part of the defendant, and as amended, there will be judgment herein in favor of petitioner and against defendant as regards his executory proceeding, all costs to be paid by defendant.
Amended and affirmed.