209 So.2d 320 (1968)
Clyde V. BOURGEOIS, Jr.
v.
George J. SAZDOFF, a/k/a George J. Sazdoff, d/b/a George's Hardware and Sporting Goods.
No. 2963.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1968.
Rehearing Denied May 6, 1968.
*321 Robert D. Edwards, Gretna, for plaintiff-appellee.
John M. Holahan, New Orleans, for defendant-appellant.
Before CHASEZ, BARNETTE and JOHNSON, JJ.
JOHNSON, Judge.
In the foreclosure of a chattel mortgage by executory process the public sale of the mortgaged property for the price of $4,000.00 did not pay the debt in full and plaintiff obtained a deficiency judgment for $23,611.00, with 6% interest and 15% attorney's fees, subject to a credit of $4,000.00. The deficiency judgment was rendered on June 16, 1967, by the Twenty-Fourth Judicial District Court against the defendant, the mortgagor. The defendant brought the issues to this court by a devolutive appeal.
In the foreclosure petition filed January 22, 1964, plaintiff alleged that the stock of merchandise and fixtures, (consisting of hardware, sporting goods, office appliances and fixtures all covered by the chattel mortgage), were perishable and the court ordered a quick sale without advertisement but with appraisement. The court order was dated January 23, 1964, and the sale was made by the sheriff on January 27, 1964.
Plaintiff's petition for a deficiency judgment, filed on July 10, 1964, alleges that the plaintiff is the holder and owner of a promissory note dated May 2, 1961, made by defendant in the original principal sum of $27,000.00, stipulating 6% interest and 15% attorney's fees; that the note and mortgage are attached to the petition for executory process filed on January 22, 1964; that in the foreclosure proceeding the property was appraised at $6,000.00 and sold to plaintiff for $4,000.00. On April 2, 1965, counsel for plaintiff filed an amended petition adding a new article alleging that the debt sued on arose as a result of a criminal act on the part of defendant by disposing of mortgaged property without remitting to plaintiff the price received to apply on the debt and by concealing mortgaged property without *322 a release from the mortgage, and, therefore, this debt is not dischargeable in bankruptcy.
On the same day, April 2, 1965, counsel for defendant filed an answer to plaintiff's original petition for a deficiency judgment denying all the allegations of the petition and alleging that the plaintiff unlawfully and illegally seized the mortgaged property and because of the illegal seizure and sale the defendant has been unable to pay the debt; that the property seized was not perishable in the sense of the law of this state and that the petitioner is barred from obtaining a deficiency judgment. On April 27, 1966, the defendant filed an amended answer alleging that the quick sale of the property as perishable "in globo," without advertisement and without inventory was illegal; that the "defendant" had appraised the property at $4,000.00, (this is evidently in error for the reason that before the sale the defendant appraised the property at $25,000.00 and the "so-called" appraisement of the plaintiff through his attorney was $4,000.00), and that the third appraiser (appointed by the sheriff because of the difference) signed an appraisal form but did not enter any amount as his appraisal. Defendant alleges as a further illegality that the property being in no way perishable, the sale as such was in violation of the deficiency judgment law and amounted to a "dation en paiement." It is further alleged that in any event, the debt is barred by the discharge of defendant in bankruptcy in the proceeding filed in the United States District Court on April 8, 1965, and the discharge granted on July 19, 1965.
On these issues, made by the petition as amended and the answer as amended and certain documents and proceedings referred to in each, testimony was heard in the trial of the case on May 27 and June 20, 1966, and March 6, 1967. Judgment was rendered on June 16, 1967, in favor of plaintiff and against the defendant as prayed for.
In the preamble of its judgment the court said, inter alia, that the court was convinced that the sale was valid and that this is a valid suit for a deficiency judgment; that the defendant is not discharged in bankruptcy of this debt because the debt was not listed in the bankruptcy schedule; that the plaintiff had no actual knowledge of the bankruptcy, and had no opportunity to file proof of his claim therein; that the defendant, with the intention of preventing plaintiff from obtaining the money due him, had sold merchandise contrary to his written agreement with plaintiff, thereby defrauding plaintiff, which the court felt made the debt nondischargeable in bankruptcy, and the court held that the plaintiff had proved his case by a preponderance of the evidence.
We find several irregularities in the foreclosure of the chattel mortgage and sale of the movable property of such a nature as to make this deficiency judgment invalid and it must be set aside. We think the most serious defects in the foreclosure proceeding is the sale of the property as perishable, without advertisement and under circumstances which amount to a sale without appraisement.
There are provisions of the law which make it proper for the court to order the immediate sale at public auction, without advertisement of property that because of its inherent qualities it is subject to decompose rapidly and to loss or deterioration pending compliance with the usual formalities. C.C.P. arts. 2333; 2503; 2724; 3513. But there is no evidence in this record to indicate that the stock of merchandise and fixtures, consisting entirely of hardware, sporting goods, air conditioners, cash register, Victor icebox, filing cabinet, desk and chairs, Howell scale, pipe machine, shelves and counters should be classed as perishable, and we are firmly convinced that such articles would not lose their value or usability in the two weeks it would require to advertise and sell them. In fact, on page 18 of the transcript of testimony of March 6, 1967, Mr. Edwards, attorney for plaintiff, throughout this proceeding, made this stipulation: "* * * that if it [the stock] *323 had remained in the building for 30 days, as it remained at the time of the sale, the deterioration would have been negligible." The petition for the foreclosure, filed by Mr. Edwards for plaintiff, made the allegation that the owner of the building would throw the property out of the building within 48 hours and the elements would destroy its use and value before the property could be advertised according to law, but there is not one word of evidence to support that allegation. In fact, the evidence shows beyond question that there never was any emergency or threat to expose the property to the outside elements.
When the order for the quick sale issued, the notice of seizure, with a detailed inventory attached, was served on the defendant on January 24, 1964. At the end of the inventory there appears the initials "C B" and "G J S" which indicates the approval by both plaintiff and defendant. That notice, addressed to and served on defendant, said at the very beginning: "TAKE NOTICE, That I have seized, and, in three days from the service hereof, shall proceed to advertise and sell, according to law, the following described property, to-wit:" In that notice the defendant was called upon to appoint an appraiser at the sheriff's office on the 27th day of January, 1964, at 9:30 o'clock a. m. The defendant appeared at the sheriff's office and appointed himself as his appraiser, took the oath required by law, and signed a formal appraisement of $25,000.00 as the value of the property. The evidence shows that the defendant attended the sale on that same day. There was no appeal from the order for executory process and no injunction sought or other opposition made to prevent the sale. If this were a proceeding to set aside the sale or for damages, for instance, resulting from an illegal sale, it may be that the defendant should be held to have waived any objection to the sale of the property en bloc as perishable or as having been made without advertisement. There is some authority in this state to that effect. We believe, however, that in this action of executory process, where the highest bid at the auction sale was not sufficient in amount to pay the cost and the debt, the plaintiff now seeking a moneyed judgment against the defendant for the unpaid portion of the debt, it is extremely important that the sale be made strictly according to law in all respects and that the defendant is entitled to urge as a defense to the claim for a deficiency judgment any illegal step which brought about the sale that would have been held to be illegal on an appeal from the order or on an application to enjoin the sale.
No contention is made that the defense is a collateral attack on the order of seizure and sale. Such a contention could not prevail because the present action is for a moneyed judgment against defendant and the reason the illegality of the sale could be urged as a defense is that this is in the nature of a new proceeding against this defendant and there is no cause or right of action for a deficiency judgment unless there has been a prior public sale of mortgaged property, legal in all respects, but leaving a deficiency in the payment of the debt. As to defendant's right to urge such defenses when there has been an illegal sale pursuant to an illegal order, in the case of Mack Trucks, Inc. v. Dixon, La.App., 142 So.2d 605, 608, Judge McBride, as the author of the opinion of this Court, speaking of a defense in a claim for deficiency judgment, after a sale by executory process, said:
"* * * It was not incumbent on the defendants to do anything in the matter of the seizure or sale. Merely because they remained silent and took no affirmative steps to contest the illegal proceedings was not a waiver of any right and does not estop them from now asserting the absolute nullity of the sale. See Franek v. Turner, 164 La. 532, 114 So. 148.
"In Le Blanc v. Rock, supra [84 So.2d 629] the Court of Appeal, First Circuit, held that the mortgagors' failure to *324 contest the seizure and sale of equipment by executory process did not prevent their assertion of defenses on the merits in a subsequent suit by the mortgagee for a moneyed deficiency judgment.
"In Myrtle Grove Packing Company v. Mones, 226 La. 287, 76 So.2d 305, the Supreme Court said:
"`Executory process, under which a creditor is permitted, without citation or the usual legal delays, to seize the property of the debtor in satisfaction of a claim, is a harsh remedy specifically sanctioned by the Constitution, Section 44 of Article VII, * * *. Consequently, there must be strict compliance with the letter of the law governing this severe remedy. Courtney v. Andrews, 10 Rob. 180; Cumming v. Archinard, 1 La.Ann. 279; Robb v. Potts, 2 La.Ann. 552; Pele v. Meaux, 17 La.Ann. 58; Ricks v. Bernstein, 19 La. Ann. 141; Calhoun v. Mechanics' & Traders' Bank, 30 La.Ann. 772; Bank of Leesville v. Wingate, 123 La. 386, 48 So. 1005; and General Contract Purchase Corp. v. Doyle, La.App., 56 So.2d 432. * * *'"
In the case of White Motors Co. v. Piggy Bak Cartage Corp., 202 So.2d 294, this Court held that lack of authentic evidence of authority of the president of defendant corporation to execute the chattel mortgage and the note was not sufficient to deprive the plaintiff of a deficiency judgment after a sale in the foreclosure of the chattel mortgage, the sale being otherwise regular, there having been no appeal by the mortgagor from the order of seizure or the sale and the property having passed into the hands of an innocent purchaser. That decision apparently distinguished that case from Mack Trucks, Inc. v. Dixon, supra, case by the fact that the property in the White Motors Co. case had been acquired by a third person. The court that issued the order in the Mack Trucks, Inc., case was without jurisdiction of the defendant and the property. The orders of seizure and sale in both cases were illegal and the sales were equally illegal. Neither in this case nor in any of the cited cases herein was the defendant attempting to set the sale aside. The petition for a deficiency moneyed judgment in the case now before us, as in the other cases, presents the issue of the illegality of the sale. Some of the cases holding that the defendant is estopped in a deficiency judgment proceeding to attack the sale if there were no appeal and no effort to prevent the sale are difficult to distinguish from those cases which held that the defendant is not estopped to urge as a defense apparent illegalities in the order, the seizure, and the sale which bring about the unlawful sale. With the present lights before us, we now cannot see any legal distinction or difference, as to the rights of a defendant, when the issue is simply a claim for a moneyed deficiency judgment, between a sale by the order of a court without jurisdiction of property and defendant and the sale where there is a lack of authentic authority to execute a note and mortgage with the property passing into the hands of disinterested third persons. Both such sales are illegal and there is no sale in either case. When the issue is to set the sale aside or to collect damages from the plaintiff for irregularities which render the order and the sale illegal, or for some other such reason, then estoppel may be employed, but it is our opinion that if the issues arise in a claim for a moneyed deficiency judgment, then the defendant should be permitted to urge the defense of irregularities which result in an illegal sale.
Judge Tate said in Le Blanc v. Rock, La.App., 84 So.2d 629:
"* * * Reichard v. Michinard, 33 La.Ann. 380, held that defendant could not urge in the subsequent deficiency judgment proceedings the alleged invalidity of the earlier sheriff's sale under executory process (for selling the seized property en bloc, rather than by lots) when he had failed as was his right to *325 protest the defects at time of sale. Brown v. Freret, 10 Orleans App. 150, held that a defendant who permits without opposition the execution of judgment, cannot thereafter contest its validity. While these latter two cases might be authority for the proposition that present defendants, having permitted the seizure and sale under executory process without opposition, cannot subsequently attack the validity of the order for seizure and sale, the seizure, or the sale; they are not authority for the proposition that defendants are estopped to assert defenses to monied judgment against them, sought for the first time in the present deficiency proceedings."
We find no case which questions the right of a defendant to urge the defense that the foreclosure sale was made without appraisement of the property to defeat a claim for a deficiency judgment. The deficiency judgment law is specific in its requirements of a valid appraisement of the property before the public sale. One of the issues in this case is that there was no valid appraisement before the sale. The plaintiff attempted to appoint himself as an appraiser by orally delegating his attorney to take the oath and sign the appraisal form for him. The law requires that the appraiser in such a case shall take an oath. R.S. 13:4365. The purported oath of plaintiff in this case reads as follows:

That is not the oath of the plaintiff as an appraiser nor is it the oath of Mr. Edwards, the attorney. The taking of an oath is a personal thing, as much so as an appendectomy, and it cannot be taken or subscribed in a representative capacity. The appraisal form valuing the property at $4,000.00 was made by the attorney for the plaintiff in the same manner.
The oath and appraisement of the defendant for himself are regular in form and substance, appraising the property at $25,000.00. The oath and appraisement for the plaintiff amounting to naught, there was only one appraisal when the law says there must be twoone by each party in this case. R.S. 13:4363. The sheriff accepted the purported oath and appraisement *326 on behalf of plaintiff and because of the apparent difference in the valuation on behalf of each party the sheriff appointed N. C. Duvic a third appraiser. R.S. 13:4365. Mr. Duvic signed the oath in proper form, but the appraisal form signed by him makes no valuation of the property and that part of the form is left blank. The sheriff's proces verbal recites that the third appraiser estimated the value of the property at $6,000.00 and the sheriff made the sale to plaintiff as the last and highest bidder for $4,000.00. In the lower left corner of the Duvic appraisal sheet there is a written notation: "3r $6000.00 start 4000.00" but that notation is in the lower left corner of the page and Duvic's signature is higher up on the right side of the page. The notation is not signed by anybody and there is no evidence to show who put it there or for what purpose. The sheriff's proces verbal says that Mr. Duvic appraised the property at $6,000.00, but the presence of the appraisal form in blank in the record (page 27, Vol. 1) refutes the sheriff's statement. Assuming, for the sake of argument, that failure to fill in a proper valuation of the property was an oversight, the situation is no better because the appraisement of plaintiff was clearly invalid for the lack of the oath, amounting to no appraisal at all. Therefore, the attempt to sell the property was without appraisement and the sale and the deficiency judgment are wholly invalid. Carr v. Lattier, La.App., 188 So.2d 645; Gumina v. Dupas, La.App., 159 So.2d 377; Mack Trucks, Inc. v. Dixon, La.App., 142 So.2d 605; David Investment Company v. Wright, La.App., 89 So.2d 442; Soileau v. Pitre, La.App., 79 So.2d 628; Simmons v. Clark, La.App., 64 So.2d 520; Home Finance Service v. Walmsley, La.App., 176 So. 415.
The defendant was granted a discharge in bankruptcy with no exception in connection therewith on July 19, 1965, before the trial of the case. Counsel for the defendant stipulated during the trial at page 51 on the first day, May 27, 1966, that defendant's debt to plaintiff was not listed on the schedule of debts it having been left off by error of Mr. Bittmar Landry, the attorney who prepared and filed the bankruptcy schedules for the defendant. There is considerable testimony as to whether plaintiff had actual knowledge of the bankruptcy. The plaintiff denied having such knowledge. From the testimony and the pleading, it would appear that the plaintiff did know that defendant had been adjudged a bankrupt. However, it is unnecessary for us to make a specific finding of fact on this issue, since we are convinced for the reasons above stated that the deficiency judgment cannot be maintained.
There are also other issues in the case. For instance, the note paraphed by the notary public to identify it with the mortgage bears 15% for attorney's fees and the act of mortgage in authentic form provides for 10% attorney's fees. There is no explanation of the variance. R.S. 13:4104. There are two documents or agreements made by the parties in authentic form subsequent to the date of the note and mortgage, but the note is not paraphed by the notary to identify these agreements with it. One of these agreements completely changes the plan of payment of the debt. These agreements are declared upon in plaintiff's foreclosure petition as furnishing grounds for the right to foreclose the mortgage. We do not deem it necessary to discuss or pass upon any of these additional issues for the reason that we prefer to rest our decision on other irregularities discussed hereinabove.
For the reasons given, the judgment appealed from is reversed, and it is ordered, adjudged and decreed that plaintiff's suit be and it is dismissed at plaintiff's cost.
Reversed.